IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MON AIMEE CHOCOLAT, INC., | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 14-1568 |
| | ) | Chief Magistrate Judge Maureen P. Kelly |
| TUSHIYA LLC *doing business as* MON | ) | |
| AME CHOCOLATE; RAMONA | ) | Re: ECF No. 15 |
| THOMAS, *An individual,* | ) | |
| Defendants. | ) | |

## OPINION

**KELLY, Chief Magistrate Judge**

Pending before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint or in the Alternative to Transfer Plaintiff's Action. (ECF No. 15). For the following reasons, the Motion to Dismiss is denied and the Motion to Transfer is granted. This action will be transferred to the United States District Court for the Northern District of Illinois.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

In this diversity trademark infringement action, Plaintiff MON AIMEE CHOCOLAT ("Plaintiff" or MON AIMEE CHOCOLAT") is a Pennsylvania corporation, with a principal place of business in the Strip District section of Pittsburgh. Plaintiff alleges that since 2001, it has used the MON AIMEE CHOCOLAT name to identify and market its goods and services and, since 2002, has sold various chocolates and other gourmet sweets through its website, www.monaimeechocolat.com.  MON AIMEE CHOCOLAT alleges that its customers, competitors and the general public have come to associate high quality chocolate and confectionary products sold by Plaintiff with the MON AIMEE CHOCOLAT mark.

1

Defendant Ramona Thomas ("Thomas"), an Illinois resident, formed Defendant Tushiya, LLC, an Illinois limited liability corporation, ("Tushiya"), on or about November 2, 2007. Thomas is Tushiya's sole employee. Tushiya is a small, minority owned business in Chicago, Illinois. Tushiya began selling chocolates and confectionary goods under the name LUXE CHOCOLAT, using the website http://luxechocolate.com. Subsequently, Defendants changed the name of its product line to MON ÂME CHOCOLAT, and on or about May 29, 2014, started using the website [http://monamechocolat.com](http://monamechocolat.com). On June 2, 2014, Tushiya filed a federal trademark application for MON ÂME CHOCOLATE for use in marketing its products and for on-line ordering services.

Plaintiff alleges it became aware of Defendants' competing use of the MON ÂME CHOCOLAT mark in June of 2014, and on June 24, 2014, filed its own federal trademark application seeking to formalize its use of the MON AIMEE CHOCOLAT mark. Plaintiff alleges that Defendants' use of the mark for its products and as a domain name constitutes false designation of origin (Count I), cybersquatting (Count II), and common law infringement and unfair competition (Count III). Plaintiff claims that Defendants' conduct has caused or will result in confusion among customers and the general public, and has been done for the purpose of defrauding and deceiving the public.

Defendants have filed a Motion to Dismiss Plaintiff's Complaint or, alternatively, seek the transfer of this action to the United States District Court for the Northern District of Illinois, contending that this Court lacks personal jurisdiction over Defendants. (ECF No. 15). This Court entered an Order on February 23, 2015, permitting limited discovery related to the propriety of the exercise of personal jurisdiction over the Defendants. The parties have filed their briefs in support and in opposition to the Motion to Dismiss, and have sought and been

granted leave to file certain exhibits containing proprietary information under seal. (ECF Nos. 16, 20, 22, 28, 30, 31, 32).

## II. STANDARD OF REVIEW

### A. Rule 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) allows a party to seek dismissal of a complaint or any portion of a complaint for lack of personal jurisdiction over the defendant. In ruling on a Rule 12(b)(2) motion, "a court must accept the plaintiff's allegations as true and draw in the plaintiff's favor all reasonable inferences supported by the well-pleaded factual allegations." Arrington v. Colortyme, Inc., 972 F. Supp.2d 733, 739 (W.D. Pa. 2013) (citing Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 151 n. 1 (3d Cir. 1992)). However, the court need not limit the scope of its review to the pleadings and instead must consider affidavits and other competent evidence submitted by the parties. Patterson by Patterson v. F.B.I., 893 F.2d 595, 603–04 (3d Cir. 1990); Time Share Vacation Club v. Atl. Resorts, Ltd., 735 F.2d 61, 66 n. 9 (3d Cir. 1984).

In weighing the evidence, "[w]here the defendant has raised a jurisdictional defense, the plaintiff bears the burden of establishing either that the cause of action arose from the defendant's forum-related activities (specific jurisdiction) or that the defendant has 'continuous and systematic' contacts with the forum state (general jurisdiction)." Hufnagel v. Ciamacco, 281 F.R.D. 238, 244 (W.D. Pa. 2012), quoting Mellon Bank (East) PSFS, N.A. v. DiVeronica Bros., Inc., 983 F.2d 551, 554 (3d Cir.1993); Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004); Metcalfe v. Renaissance Marine Inc., 566 F.3d 324, 330 (3d Cir. 2009).

### B. Motion to Transfer Venue

A motion to transfer venue is governed by 28 U.S.C. § 1404(a), when, as here, the action may be brought in both the original and the requested venue. Section 1404(a) provides: "For the

convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

The United States Court of Appeals for the Third Circuit has held that the burden of establishing the need for transfer in Section 1404(a) motion rests with the movant, and, "in ruling on defendants' motion, the plaintiff's choice of venue should not be lightly disturbed." Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995). Courts have "broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." Id., at 883 (citing Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 30–31 (1988)).

## III. DISCUSSION

Under Rule 4(e) of the Federal Rules of Civil Procedure, a federal district court sitting in diversity has personal jurisdiction over a non-resident defendant only to the extent that the laws of the forum state permit it. Pennsylvania's long-arm statute permits state courts to exercise personal jurisdiction over nonresident defendants "to the constitutional limits of the Due Process Clause of the Fourteenth Amendment." See 42 Pa. C.S. § 5322. In other words, "a district court's exercise of personal jurisdiction pursuant to Pennsylvania's long-arm statute is … valid as long as it is constitutional." Pennzoil Products Co. v. Colelli & Assoc., Inc., 149 F.3d 197, 200 (3d Cir. 1998), quoting Mellon Bank (East) PSFS, Nat. Ass'n v. Farino, 960 F.2d 1217, 1221 (3d Cir. 1992).

Due process requires that the defendant have "minimum contacts" with the forum state. Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2001)(quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). "Minimum contacts must have a basis in 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum

4

state, thus invoking the benefits and protections of its law.'" Remick, 238 F.3d at 255 (quoting Asahi Metal Indus. Co., Ltd. v. Superior Court of Califormia, 480 U.S. 102, 109 (1987)(quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985))). "Having minimum contacts with another state provides "'fair warning'" to a defendant that he or she may be subject to suit in that state." Marten v. Godwin, 499 F.3d 290, 296 (3d Cir. 2007)(internal citations omitted).

Once minimum contacts are established, the court must decide whether the exercise of personal jurisdiction over the defendants would comport with "traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. at 316. In making this determination, courts can consider "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." Burger King, 471 U.S. at 477 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980)).

Personal jurisdiction may be invoked over a non-resident defendant on the basis of either "general" or "specific" jurisdiction, and both the quality and quantity of the necessary contacts differ according to which sort of jurisdiction applies.

General personal jurisdiction arises from a defendant's continuous and systematic contacts with the forum that are unrelated to the cause of action being litigated. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 412–13, 414 nn. 8 & 9 (1984), Rocke v. Pebble Beach Co., No. 13–1149, 2013 WL 5568727, at *2 (3d Cir. Oct. 10, 2013).

Specific jurisdiction is properly exercised "when the plaintiff's claim is related to or arises out of the defendant's contacts with the forum." Mellon Bank, 960 F.2d at 1221. The due

process inquiry must focus on "the relationship among the defendant, the forum, and the litigation." Rush v. Savchuk, 444 U.S. 320, 327 (1980) (quoting Shaffer v. Heitner, 433 U.S. 186 (1977)). "Put another way, when a defendant's conduct is such that he or she reasonably should have foreseen being haled into court in the forum, the necessary minimum contacts have been shown." World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). However, "specific jurisdiction is not established if the non-resident defendant's conduct in the forum is 'random, isolated or fortuitous.'" Planet Goalie, Inc. v. Monkeysports, Inc., 2011 WL 3876178 at *3 (M.D. Pa. Sept. 1, 2011)(quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984)).

In the instant case, Plaintiff does not dispute that general jurisdiction over Defendants from continuous and systematic contact with Pennsylvania is lacking. The evidence establishes that Defendants do not maintain a physical presence in Pennsylvania, do not have offices, employees, registered agents or bank accounts in Pennsylvania, and are not registered to do business in Pennsylvania. (ECF No. 16-1). Rather, Plaintiff relies upon Defendants' maintenance of an interactive website to establish that Defendants have "purposefully availed" themselves of the privilege of engaging in commercial activity in Pennsylvania, such that the exercise of specific jurisdiction in this forum is appropriate.

> Ascertaining specific personal jurisdiction in claims arising from Internet commerce requires courts to determine whether a defendant established minimum contacts through cyberspace. Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1123–24 (W.D. Pa.1997). "[Zippo] has become a seminal authority regarding personal jurisdiction based upon the operation of an Internet web site." Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 452 (3d Cir. 2003). When analyzing Internet commerce cases, "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." Zippo, 952 F. Supp. at 1124. This sliding scale ranges from situations where a defendant uses an interactive commercial website to actively transact business with residents of the forum state (personal jurisdiction exists) to situations where a passive website

> merely provides information that is accessible to users in the forum state (personal jurisdiction does not exist). Id. To determine whether personal jurisdiction exists for situations between these extremes, we examine "the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." Id.; see Toys "R" Us, 318 F.3d at 452. In Zippo, the court found personal jurisdiction existed where the defendant "[did] more than advertise on the Internet in Pennsylvania" by using its website to "contract[ ] with approximately 3,000 individuals and seven Internet access providers in Pennsylvania." Zippo, 952 F. Supp. at 1126.

Ackourey v. Sonellas Custom Tailors, 573 F. App'x 208, 211-12 (3d Cir. 2014). Even where a website is interactive and permits an exchange of information and commercial transactions, there must also be evidence of sufficient commercial engagement with the forum such that maintenance of suit does not offend traditional notions of substantial justice. Id. ("Furthermore, even if scheduling appointments alone was sufficiently interactive and commercial under Zippo, Ackourey has failed to provide any evidence that Pennsylvania residents used Defendants' website to schedule appointments…. Although Defendants' website may have informed potential customers in Pennsylvania of the possibility of appointments in the Commonwealth, there is no evidence Defendants received any web-based requests for appointments in Pennsylvania or transacted any business whatsoever with Pennsylvania residents via its website.").

In the case at issue, to weigh the connection of Defendants' interactive website to this jurisdiction, Plaintiff must provide evidence of "the intentional nature of the defendant's conduct vis-a-vis the forum state." Toys "R" Us, Inc., 318 F.3d at 452. "[T]here must be some evidence that the defendant 'purposefully availed' itself of conducting activity in the forum state, by directly targeting its website to the state, knowingly interacting with residents of the forum state via its website, or through sufficient other related contacts." Id. at 454. In Blackburn v. Walker, the United States District Court for the Eastern District of Pennsylvania held that "[c]reating a Web Site may be felt nation or even world-wide, but without more, it is not an act purposefully

7

directed toward the forum." Blackburn v. Walker Oriental Rug Galleries, Inc., 999 F. Supp. 636, 639 (E.D. Pa.1998) (citing Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 418 (9th Cir.1997)).

Here, the level of internet activity directed to Pennsylvania is nearly non-existent. The evidence establishes that Defendants' website is interactive, available to potential customers nationwide, and permits customers to place orders, make payments and email Defendants. However, it is critical to note that there is no evidence that the website has generated any Pennsylvania claim-related sales or shipments. After conducting thorough discovery, Plaintiff has produced evidence of three internet transactions connected to Pennsylvania. All three transactions were cancelled without shipment of Defendants' product into Pennsylvania, and none could be attributed to confusion as to the source of the products sold, which is the basis of Plaintiff's claims for infringement, cybersquatting and unfair competition.

The first transaction involved an attempted purchase of Defendants' products by Plaintiff's counsel, apparently for purposes of this litigation, one day prior to mailing a "cease and desist letter," and so does not reflect customer confusion caused by the allegedly infringing trademark. (ECF Nos. 21-3, 21-4, pp. 2-3, 32-2, p. 27) This order was cancelled before shipment. The second transaction was just a few weeks later, and was cancelled by Defendant Thomas because "it seemed like a sham order to me that in the time that I had been in business, I had never received an order from Pennsylvania and in 22 days I had two orders from Pennsylvania, and this one happened to be placed at 3:00 in the morning. Seemed shammy." (ECF No. 32-2, p. 27-28). Defendant Thomas concedes that she voided these first two transactions because they were placed in the same time frame that Plaintiff threatened litigation, but Defendant Thomas also testified that she had never sold products in Pennsylvania prior to these "shammy" transactions. The third and final transaction was placed by Defendants'

8

attorney from a Deerfield, Illinois address on December 15, 2014, and would have shipped Defendants' product into Pennsylvania as a gift to counsel's friend. That order was cancelled and fully refunded to avoid any commercial contact with Pennsylvania. (ECF No. 32-2, pp. 34- 35).

There is no evidence that Defendants ever specifically targeted the website to Pennsylvania, or directed email promotions to customers in Pennsylvania. (ECF No. 32-2, pp. 40-44). Defendant Thomas has two friends who reside in Pennsylvania, but neither ordered Defendants' products nor received shipments of Defendants' goods. While Defendant Thomas testified that she used both the United States Postal Service and FedEx Ground for shipping, she was unaware that FedEx Ground maintains its headquarters in Pennsylvania. Defendant Thomas made all product shipments through a local Illinois FedEx store and believes its headquarters is in Memphis, Tennessee. (ECF No. 32-2, p. 46). Accordingly, her use of FedEx does not create purposeful activity in this forum.

Defendants have consummated sales in several states through the interactive nature of the website. However, the quality and quantity of commercial contact in Pennsylvania does not reflect conduct that is purposefully directed at this forum so as to support the exercise of specific jurisdiction. In contrast to Zippo, where the allegedly infringing website was used to contract with 3,000 Pennsylvania customers and seven internet access providers, Defendants have not consummated a single sale resulting in the shipment of goods into Pennsylvania. Further, where Zippo "repeatedly and consciously chose to process Pennsylvania residents' applications and to assign them passwords," knowing that the contacts would result in business relationships, there is no evidence that Defendants received or tracked internet-generated contact information from this jurisdiction. Cf Square D Co. v. Scott Elec. Co.,No. 06-00459, 2008 WL 4462298 *10-11 (W.D. Pa. Sept. 30, 2008)(where defendant collected revenue and knowingly recorded internet

9

sales of goods from customers in the forum state, it has purposely availed itself of the laws and privileges of the forum such that a finding of specific jurisdiction is appropriate).

The evidence before the Court establishes that Defendants consciously chose *not* to conduct business in Pennsylvania.[1] The reasons for avoidance appear plainly related to Plaintiff's action against them, but their avoidance does not warrant the exercise of this Court's jurisdiction over a party with no purposeful or apparent connection to Pennsylvania. Because there is no evidence Defendants have "knowingly interact[ed] with residents of [Pennsylvania] via [their] web site, or through sufficient other related contacts," nor evidence that Defendants consciously chose to conduct business in Pennsylvania such that Defendants "[have] clear notice that [they are] subject to suit," the exercise of jurisdiction by this Court would not be reasonable. Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d at 452, 454 (quoting Zippo, 952 F. Supp. at 1126)..

Before dismissing the Complaint, however, the Court finds that the interests of justice warrant transferring the case to a jurisdiction where personal jurisdiction lies. In this regard, if a "court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed [.]" 28 U.S.C. § 1631. This Court finds that it is in the interest of justice to transfer this case to a district where a court may properly exercise personal jurisdiction over Defendants. Tushiya is incorporated in Illinois, has a principle place of business in Chicago, Illinois, and is subject to general personal jurisdiction there. See Daimler AG v. Bauman, ___ U.S. ___, 134 S. Ct. 746, 760 (2014) ("With respect to a corporation, the place of

---

[1] "If [the defendant] had not wanted to be amenable to jurisdiction in Pennsylvania, the solution would have been simple – it could have chosen not to sell its [products] to Pennsylvania residents." Zippo, 952 F. Supp. at 1126-7.

incorporation and principal place of business are paradig[m] ... bases for general jurisdiction." (*internal quotation marks and citation omitted*)). Thomas is also a resident of Chicago, Illinois. Accordingly, the Court will transfer this case to the United States District Court for the Northern District of Illinois.

## IV. CONCLUSION

Upon examination of the allegations of Plaintiff's Complaint, "Defendants Tushiya, LLC d/b/a MON ÂME CHOCOLAT and Ramona Thomas Motion to Dismiss or in the Alternative to Transfer Plaintiff's Action" (ECF No. 15), and the briefs and exhibits filed in support and in opposition thereto, and for the foregoing reasons, the Motion to Dismiss or in the Alternative, Motion to Transfer Case, is denied; however, the Court will transfer this case to the United States District Court for the Northern District of Illinois.

## ORDER

AND NOW, this 12th day of May, 2015, after considering the allegations of Plaintiff's Complaint, "Defendants Tushiya, LLC d/b/a MON ÂME CHOCOLAT and Ramona Thomas Motion to Dismiss or in the Alternative to Transfer Plaintiff's Action" (ECF No. 15), and the briefs and exhibits filed in support and in opposition thereto, and for the reasons set forth in the accompanying Opinion,

IT IS HEREBY ORDERED as follows:

1. The Motion to Dismiss (ECF No. 15) is DENIED;

2. The Clerk of Court is hereby directed to TRANSFER this action forthwith to the United States District Court for the Northern District of Illinois;

IT IS FURTHER ORDERED that, pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, if the Plaintiff wishes to appeal from this Order it must do so within thirty (30) days by filing a notice of appeal as provided in Rule 3, Fed. R. App. P.

/s/ Maureen P. Kelly
MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE

cc: All Counsel of Record via CM-ECF